UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DANA MAHNKE,

        Plaintiff,

      v.                                                      16-CV-770
                                                        DECISION AND ORDER
COMMISSIONER of the Social Security
Administration,

        Defendant.

_____

On September 26, 2016, the plaintiff, Dana Mahnke, brought this action under

the Social Security Act ("the Act").  She seeks review of the determination by the

Commissioner of Social Security ("Commissioner") that she was not disabled.  Docket

Item 1.  On April 26, 2017, Mahnke moved for judgment on the pleadings, Docket Item

15, and on August 24, 2017, the Commissioner responded and cross-moved for

judgment on the pleadings.  Docket Item 21.

For the reasons stated below, this Court denies Mahnke's motion and grants the

Commissioner's cross-motion.

## BACKGROUND

I.    **PROCEDURAL HISTORY**

Beginning on July 29, 2004, Mahnke received disability benefits due to her

anxiety and affective disorders.  Docket Item 9 at 78.  On May 12, 2012, and upon

review of her claim, the Commissioner issued a cessation order based on Mahnke's

"significant medical improvement," and Mahnke stopped receiving benefits on July 12,

2012.  *Id.* at 78-79.

On August 29, 2013, Mahnke again applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). *Id.* at 167. She claimed that she had been disabled since January 5, 2013, due to her anxiety, anxiety attacks, likelihood of becoming overwhelmed, inability to handle issues, difficulty leaving home, dislike of crowds, depression/fatigue, restless leg syndrome, lack of energy, trouble sleeping, and bipolar/mood disorder. *Id.* at 93-94.

On December 3, 2013, Mahnke received notice that her application was denied because she was not disabled under the Act. *Id.* at 117. She requested a hearing before an administrative law judge ("ALJ"), *id.* at 129, which was held on January 15, 2016. *Id.* at 138. The ALJ then issued a decision on February 12, 2016, confirming the finding that Mahnke was not disabled. *Id.* at 23. Mahnke appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 5. On September 26, 2016, Mahnke filed this action, asking this Court to review the ALJ's decision. Docket Item 1.

## II.    RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Mahnke's objection. Mahnke was examined by several different providers, but only two, Sanjay Gupta, M.D., and Kavita Subrahmanian, Ph. D., are of particular significance to her claim of disability here.

### A.    Sanjay Gupta, M.D.

Mahnke began treatment with Dr. Gupta, a psychiatrist at The Dale Association, on April 2, 2013, and she saw him consistently through at least November 24, 2015. Docket Item 9 at 539, 806. At the initial visit, Dr. Gupta diagnosed Mahnke with mood

disorder, generalized anxiety disorder, and borderline traits. *Id.* at 541. He also noted

that "the likelihood of bipolar disorder should be entertained." *Id.* Dr. Gupta diagnosed

her with a global assessment of functioning ("GAF") score of 55 on April 30, 2013, and

60 on June 11, 2013, *see id.* at 542, 544, which indicated only moderate symptoms. *Id.*

at 30.

By November 24, 2015, Dr. Gupta found that Mahnke's GAF score had improved

to 65, *id.* at 806, which indicated only minor symptoms. *Id.* at 30. At this time, Dr.

Gupta also diagnosed Mahnke as bipolar type 1. *Id.*

## B. Kavita Subrahmanian, Ph. D.

On November 18, 2013, Mahnke underwent a consultative psychological

evaluation by a psychologist, Dr. Kavita Subrahmanian, in connection with Mahnke's

application for benefits. *Id.* at 624. Dr. Subrahmanian diagnosed Mahnke with

depressive and anxiety disorders. *Id.* at 627. Dr. Subrahmanian found that Mahnke's

attention was mildly impaired due to anxiety but that she was able to engage in simple

calculations. *Id.* at 626. The evaluation showed mild limitation in Mahnke's ability to

perform complex tasks, make appropriate decisions, and perform complex tasks

independently. *Id.* at 627. Dr. Subrahmanian also noted moderate limitations in

Mahnke's ability to deal with stress. *Id.* Dr. Subrahmanian attributed Mahnke's

difficulties to her psychiatric symptoms but concluded that her psychiatric problems did

not appear to be significant enough to interfere with Mahnke's ability to function on a

daily basis. *Id.*

## III.    THE ALJ'S DECISION

In denying Mahnke's application, the ALJ evaluated her claim under the SSA's five-step evaluation process for disability determinations.  *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment.  § 404.1520(a)(4)(i).  If so, the claimant is not disabled. *Id.*  If not, the ALJ proceeds to step two.  § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments.  § 404.1520(a)(4)(ii).  If there are no severe impairments, the claimant is not disabled.  *Id.*  If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations.  § 404.1520(a)(4)(iii).  If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled.  *Id.*  But if the ALJ finds that none of the severe impairments meet any in the regulations, the ALJ proceeds to step four.  § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC").  *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e).  The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy.  *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. § 404.1520(e).  If a claimant can perform past relevant work, the claimant is not disabled and the analysis ends.  § 404.1520(f).  But if the claimant cannot, the ALJ proceeds to step five.  §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that a claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

Here, the ALJ determined at step one that Mahnke had not engaged in substantial gainful activity since applying for SSI benefits. Docket Item 9 at 21. At step two, he found that Mahnke had the following severe impairments: an affective disorder and an anxiety disorder. *Id.* At step three, the ALJ determined that Mahnke's severe impairments did not meet or medically equal the criteria of any impairments in 20 C.F.R. § 404, Subpart P, Appendix 1, of the Commissioner's regulations. *Id.* at 23-28.

In assessing Mahnke's RFC, the ALJ considered her symptoms, their consistency with objective medical evidence, the submitted opinion evidence, and her hearing testimony. *Id.* at 25. The ALJ found that Mahnke's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible "for the reasons explained in this decision." *Id.* He then assigned "great weight" to Dr. Subrahmanian's November 18, 2013, opinion. *Id.*

The ALJ determined that Mahnke has the RFC: "To perform light work … except that she is not able to perform complex work which is defined as work involving multiple, simultaneous tasks or objectives of the independent setting of goals including method,

quality and quantity." *Id.* He then determined that Mahnke could not perform any past relevant work. *Id.* at 26-27.

The vocational expert testified that based on Mahnke's RFC, she would be able to perform the requirements of two separate jobs, each of which exists within the national economy. *Id.* at 27-28. More specifically, the vocational expert testified that Mahnke would be able to work as a mail clerk or a fast food worker. *Id.* at 27. Based on that testimony, the ALJ concluded at step five that Mahnke could work and therefore was not disabled. *Id.* at 28.

## LEGAL STANDARD

## I. DISTRICT COURT REVIEW

When evaluating a decision by the Commissioner, district courts have a narrow scope of review: they are to determine whether the Commissioner's conclusions are supported by substantial evidence in the record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court ***must*** accept the Commissioner's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g). "Substantial evidence" is simply more than a scintilla and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). In other words, a district court does not review a disability determination de novo. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

## DISCUSSION

### I.   ALLEGATIONS

Mahnke argues that the ALJ did not properly account for her depressive and bipolar disorders at step two of his analysis.  Docket Item 15 at 13-16.  She argues that this error resulted in a decision that is not supported by substantial evidence.  *Id.* Mahnke also argues that the ALJ did not make specific findings about the limitations imposed by her inability to deal with stress.  *Id.* at 15-16.  And she objects to the ALJ's finding that her subjective statements about her symptoms were not credible.  *Id.* at 16-19.

Because the ALJ's evaluation is supported by substantial evidence in the record and is not the result of legal error, Mahnke's objections fail and the Commissioner's cross-motion for judgment is granted.

### II.   ANALYSIS

#### A.  Consideration of Mahnke's Depressive and Bipolar Disorders

20 C.F.R. Part 404, Section 12.00, separates the listings for mental disorders into eleven discrete categories.  20 C.F.R. § 404, subpt. P, app. 1, pt. A2 (2018).  In early 2016, when the ALJ rendered his decision, listing 12.04 was entitled "Affective Disorders," and listing 12.06 was entitled "Anxiety-Related Disorders."  *Id.* (2015)*.*

If an ALJ determines that a claimant has a severe mental impairment, such as an affective disorder, the ALJ must apply a "special technique."  20 C.F.R. § 404.1520a.  In doing so, the ALJ must analyze the claimant's "degree of functional limitation" in four distinct areas: "(1) activities of daily living; (2) social functioning; (3) concentration,

persistence, or pace; and (4) episodes of decompensation." *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008).

Here, the ALJ determined that Mahnke was suffering from two such severe mental impairments: affective disorder and anxiety disorder. Docket Item 9 at 21. He compared these impairments with listings 12.04 and 12.06, respectively, but found that they did not meet or medically equal either of the listings. *Id.* at 23.

Manke's argument that the ALJ failed to account for her bipolar and depressive disorder diagnoses when he focused his discussion on listing 12.04 is unpersuasive. Listing 12.04—"Affective Disorders"—is the very listing that includes bipolar and depressive disorders. So when the ALJ found that Mahnke suffered from the severe impairment of an "affective disorder," he indeed addressed her diagnoses of bipolar and depressive disorder which, for SSI purposes, are included in "affective disorders." Stated another way, the ALJ did not fail to account for bipolar and depressive disorders when he focused on listing 12.04 because listing 12.04 describes the symptoms of these disorders, and expressly "include[s] bipolar disorders (I or II) … [and] depressive disorder." 20 C.F.R. § 404, subpt. P, app. 1, pt. A2 (2018); *see also* 20 C.F.R. § 404, subpt. P, app. 1, pt. A2 (2015). It is unclear what more plaintiff asks the ALJ to do; surely a court cannot fault an ALJ for conducting his inquiry using the labels employed by the very statutory scheme that he administers.

Even if the ALJ had erred, the error at step two was harmless because the ALJ considered the effects of all the claimant's mental impairments through the remainder of the sequential evaluation process. *See Reices-Colon v. Astrue*, 523 F.App'x 796, 798 (2d Cir. May 2, 2013). At step three, the ALJ considered the severity of all of Mahnke's

"mental impairments, considered singly and in combination" when he completed the required special assessment. He explicitly determined that Mahnke had mild restrictions in daily living; mild difficulties in social functioning; moderate difficulties with concentration, persistence, and pace; and no episodes of decompensation—findings that precluded a match at step three. *Id.* at 23-25. And those same findings precluded a match with listing 12.06—"Anxiety Related Disorders"—as well. 20 C.F.R. § 404, subpt. P, app. 1, pt. A2 (2015).

Moreover, the ALJ's finding that Mahnke's severe impairments did not meet or equal listings 12.04 or 12.06 is supported by substantial evidence, including Mahnke's medical records, testimony, and daily activity. For example, Dr. Gupta diagnosed Mahnke with bipolar type 1 and generalized anxiety disorder, but he also found that she had an "[o]rganized thought process. No psychosis . . . No manic or depressive symptoms. No delusions or hallucinations. No suicidal or homicidal ideation." *Id.* at 802. Likewise, Dr. Subrahmanian explicitly found that Mahnke's psychiatric problems were not significant enough to interfere with her ability to function on a daily basis. *Id.* at 26, 623. And Mahnke herself admitted extensive daily activity including serving as caregiver for her ailing father; taking care of her own day-to-day needs and responsibilities; and babysitting her grandchild. *Id.* at 24. All that supports the ALJ's findings that Mahnke's impairments did not equal any in listings 12.04 or 12.06.

In sum, the conditions in listing 12.04 include bipolar and depressive disorder, and the ALJ therefore did account for these diagnoses when he compared Mahnke's impairments to listing 12.04; he also accounted for her anxiety disorder when he compared her impairments to listing 12.06. And even if there had been any error, it

would have been harmless because the ALJ necessarily considered Mahnke's bipolar, depressive, and anxiety disorders at later steps when he addressed all of Mahnke's "mental impairments, considered singly and in combination." *Id.* at 23-25. Therefore, the ALJ's finding that Mahnke's severe impairments did not meet or equal either listing is supported by substantial evidence in the record, as is his finding that Mahnke's RFC enables her to work.

### B. Stress Analysis

"Because stress is 'highly individualized,' mentally impaired individuals 'may have difficulty meeting the requirements of even so-called "low-stress" jobs,' and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his ability to work." *Stadler v. Barnhart*, 464 F.Supp.2d 183, 189 (W.D.N.Y. 2006) (citing SSR 85-15; *Welch v. Chater*, 923 F.Supp. 17, 21 (W.D.N.Y. 1996)). Accordingly, "[a]n ALJ is required to specifically inquire and analyze a claimant's ability to manage stress." *Booker v. Colvin,* 2015 WL 4603958, at * (W.D.N.Y. July 30, 2015). An ALJ's failure to complete this analysis "is an error that requires remand." *Id.*

But an ALJ need not make specific findings regarding stress if the claimant's medical record does not indicate that stress will limit the claimant's ability to function. *Chamberlin v. Colvin*, 2016 WL 3912531, at *3 (W.D.N.Y. July 20, 2016). In *Chamberlin,* the claimant's doctor specifically concluded that while the claimant had "moderate limitations" in her ability to deal with stress, she had "only minimal to no limitations" in her "ability to perform work-related functions." *Id.* The court found that the ALJ appropriately addressed the claimant's stress limitations: "While Plaintiff faults

the ALJ for not incorporating a stress limitation in her RFC, . . . [the doctor's] opinion does not require one, since she found only minimal to no limitations on Plaintiff's ability to perform work-related functions." *Id.*

Here, Dr. Subrahmanian determined that Mahnke had "moderate limitations in her ability to appropriately deal with stress." Docket Item 9 at 627. Similar to the doctor in *Chamberlin,* however, Dr. Subrahmanian explicitly noted that Mahnke's problems did "not appear to be significant enough to interfere with the claimant's ability to function on a daily basis." Docket Item 9 at 30, 627. Further, Dr. Subrahmanian specifically found that Mahnke had no or mild limitations in all other work-related abilities. *Id.* at 627. For example, Dr. Subrahmanian opined that Mahnke had "no limitations in her ability to follow and understand simple directions and instructions, perform simple tasks independently, maintain a regular schedule, or learn new tasks." *Id.* at 627. The doctor further opined that Manke had only "mild limitation in her ability to perform complex tasks independently and maintain attention and concentration." *Id.* Thus, similar to the doctor's opinion in *Chamberlin*, Dr. Subrahmanian's opinion did not require the ALJ to make specific findings regarding stress limitations.

Even so, the ALJ did consider the effects of Mahnke's ability to deal with stress when he addressed Dr. Gupta's treatment notes in formulating Mahnke's RFC. *Id.* at 30. Dr. Gupta consistently noted reasons why Mahnke was "under stress," including her daughter's incarceration and a custody battle for her grandchild. *See, e.g., id.* at 544, 620, 622. Despite these multiple sources of stress, Dr. Gupta recorded consistent improvement in Mahnke's GAF score from 55 to 60 to 65—the last one of which indicated only minor issues. *See, e.g., id.* The ALJ explicitly addressed Mahnke's

stress when he found "improvement in GAF scores as high as 65, which is indicative of only minor symptoms, and essentially normal mental status examinations *despite multiple stressors.*" *Id.* at 30 (emphasis added). Dr. Gupta's consistent finding that Mahnke had a normal mental status "despite multiple stressors" suggests that Mahnke's stress issues did not disable her and therefore did not require any more specific findings by the ALJ. *See Chamberlain*, 2016 WL 3912531, at \*3.

For all those reasons, the ALJ addressed Mahnke's stressors and was not required to make more specific findings regarding Mahnke's stress limitations. Accordingly, this issue does not warrant remand.

### C. Credibility Determination

It is the responsibility of the ALJ, and not that of the reviewing court, to resolve evidentiary conflicts and determine the claimant's credibility. *Aponte v. Secretary, Dep't of Health & Human Servs.,* 728 F.2d 588, 591 (2d Cir. 1984). To determine a claimant's credibility, an ALJ follows a two-step process:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. . . . Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.

SSR 76-9P, 1996 WL 374186, at \*2 (July 2, 1996). Moreover, "[a] finding that the witness is not credible must nevertheless be set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 260-61 (2d Cir. 1988).

The specificity that the law requires of an ALJ depends on what the record before

him or her warrants. *See, e.g., Porter v. Colvin*, 2016 WL 1084162, at *9 (W.D.N.Y.

Mar. 21, 2016) ("This Court is satisfied that the ALJ applied the proper legal standards

in his credibility analysis … by evaluating [claimant's] own testimony discussing daily

activities .. frequency and intensity of symptoms [and] aggravating factors… ."); *Burden*

*v. Astrue*, 2008 WL 5083138, at *15 (D. Conn. Aug. 26, 2008) (distinguishing *Williams*

where witness's testimony was "contradicted by … medical treatment records" and "is

substantially outweighed by the rest of the record, and therefore is not critical to the

disability determination."). Here, the ALJ determined that Mahnke's impairments could

reasonably cause the symptoms about which she complained, but he found that her

statements about the intensity, persistence, and limiting effects of those symptoms were

not credible. Docket Item 9 at 29. He explained his conclusion by citing Dr. Gupta's

notes demonstrating "essentially normal mental examinations." *Id.* at 30. He also cited

the progress notes provided by The Dale Association, as well as Mahnke's own

testimony indicating she was not ready to seek employment "largely due to her role as a

caregiver to her ailing father" and the lack of any desire to work.[1] *Id.* The ALJ also

referred to Dr. Subrahmanian's opinion that Mahnke's psychiatric problems were not

severe enough to interfere with her ability to function daily. *Id.* Finally, the ALJ noted

that when asked during the hearing whether she would be able to perform her past work

with a sit/stand option, Mahnke stated that she "could not because she would still have

---

[1] To the extent that Mahnke objects to the ALJ's reliance on family obligations, the Court notes that most of the precedent plaintiff cites is not from this circuit and largely refers to disability determinations globally, not to the requisite specificity of an ALJ's credibility determination.

trouble sleeping and [sic] associated fatigue." *Id.* In response to this question by the ALJ, she did not mention any potentially limiting effects due to her mental impairments. *Id.*

The ALJ, as fact-finder, weighed the credibility of Mahnke's testimony and found it "not entirely credible for the reasons explained in this decision." *Id.* at 29. The ALJ then gave specific reasons, identified above, for that conclusion. This Court therefore cannot and will not revisit the ALJ's credibility determination.

## **CONCLUSION**

Although this Court has sympathy for Mahnke and the hardships that must stem from her impairments, the ALJ's decision was neither contrary to the substantial evidence in the record nor did it result from any legal error. Therefore, for the reasons stated above, Mahnke's motion for judgment on the pleadings is DENIED, the Commissioner's cross motion for judgment on the pleadings is GRANTED, the complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated:      September 17, 2018
            Buffalo, New York


                                                    *s/ Lawrence J. Vilardo*
                                              LAWRENCE J. VILARDO
                                               UNITED STATES DISTRICT JUDGE

14